UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

      v.

SVETLANA MAZER,
ANNA MAKOVETSKAYA, and
LARISA MEDZON,

      Defendants.

S2 11 Cr. 121 (GBD)


**GOVERNMENT'S SENTENCING MEMORANDUM**


PREET BHARARA
United States Attorney for the
Southern District of New York,
Attorney for the United States
      of America

HOWARD S. MASTER
ANDREW D. GOLDSTEIN
Assistant United States Attorneys
    - Of Counsel –

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

          v.

SVETLANA MAZER,
ANNA MAKOVETSKAYA, and
LARISA MEDZON,

          Defendants.

S2 11 Cr. 121 (GBD)

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by its attorney, Preet Bharara, United States Attorney for the Southern District of New York, Howard S. Master and Andrew D. Goldstein, Assistant United States Attorneys, of counsel, respectfully submits this memorandum of law in advance of the sentencing hearing for the defendants Svetlana Mazer, Anna Makovetskaya ("Makovetskaya"), and Larisa Medzon ("Medzon") (collectively, "the defendants"), which is scheduled to occur on July 15, 2014, and in response to the defendants' sentencing submissions. The United States Probation Office, in the Presentence Investigation Reports ("Presentence Reports" or "PSRs") it has prepared for each of the defendants, recommends downward variances from the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G.") ranges applicable to the defendants.

For the reasons set forth below, although sentences within the relevant Guidelines ranges would be appropriate considering the seriousness of the overall offense and the need for deterrence, considering the mitigating factors identified in the Presentence Reports, the Government would not oppose the sentences recommended by the Probation Office.

The Government also respectfully requests that, at the time of sentencing, the Court conduct a *Curcio* allocution of defendant Svetlana Mazer, as it did with Mark Mazer, to address

her counsel's simultaneous representation of Mark Mazer on appeal and Svetlana Mazer before this Court. Finally, the Government respectfully requests that the Court orally order, at the time of sentencing, forfeiture of the properties listed in the Consent Preliminary Orders of Forfeiture concerning the defendants that previously have been entered in the case.

## I. FACTUAL BACKGROUND

The Court already is fully familiar with the CityTime fraud, kickback, and money laundering scheme, having presided over a six-week trial, sentencings of co-defendants, and numerous other proceedings in the case. Accordingly, the following discussion addresses only the offense conduct of the defendants who will be sentenced on July 15.

All three defendants initially were charged in Indictment S2 11 Cr. 121 (GBD) (the "Indictment") with participating in a money laundering conspiracy with Mark Mazer and Dimitry Aronshtein ("Aronshtein"), among others, in violation of Title 18, United States Code, Section 1956(h). The charges arose out of conduct that the defendants engaged in and facilitated in connection with the elaborate scheme that Mark Mazer, with Aronshtein's assistance, established to launder the tens of millions of dollars in crime proceeds that they generated from the CityTime fraud and kickback scheme. In particular, at Mark Mazer's direction, all three defendants set up shell companies and shell company bank accounts that were used as conduits to launder crime proceeds. Makovetskaya established a shell company called MAS Solutions, Inc. ("MAS"), and bank accounts held in the name of MAS; Medzon established shell companies called SJM Services, Inc. ("SJM") and Front Line Consulting, Inc. ("Front Line"); and Svetlana Mazer established, with Mark Mazer, second-tier shell companies called MS Advantage, Inc. ("MS Advantage") and MS Development, Inc. ("MS Development") that

were used to receive proceeds that had been laundered abroad or through the shell companies established by Makovetskaya and Medzon.  Makovetskaya and Medzon also established post office boxes which were used as mailing addresses for the shell companies that they had helped establish.  They also personally engaged in some of the transactions through shell company bank accounts that facilitated the scheme.  Medzon also maintained safe deposit boxes that were used to hold hundreds of thousands of dollars in cash connected to the scheme.

All three defendants engaged in deceptive conduct or made deceptive statements that facilitated the scheme.  Svetlana Mazer filled out false VENDEX paperwork that concealed her interest in the shell companies, while the Government's investigation was pending, in order to obstruct the investigation into the scheme.  As reflected by testimony and exhibits at trial, Makovetskaya filled out false paperwork and, along with Aronshtein, lied to a bank official during an anti-money-laundering ("AML") interview to hide the fact that MAS was a shell company.  (Trial Transcript ("Tr.") 3659-3676; GX 3020-1).  Medzon structured hundreds of cash withdrawals from over a dozen shell company bank accounts over the course of several years to avoid the filing of Currency Transaction Reports ("CTRs") that might have triggered bank or law enforcement scrutiny of the financial transactions and companies used to facilitate the scheme.  All three defendants ended up pleading guilty to charges arising out of this deceptive conduct, pursuant to plea agreements with the Government.  Specifically, Svetlana Mazer pleaded guilty to obstruction of justice, in violation of Title 18, United States Code, Section 1512(c); Makovetskaya pleaded guilty to conspiring to make false statements to a bank, in violation of Title 18, United States Code, Section 371; and Medzon pleaded guilty to

structuring cash transactions to avoid currency transaction reporting requirements, in violation of Title 31, United States Code, Section 5324.

## II.     THE GUIDELINES AND SECTION 3553(a) FACTORS

### A.     The Guidelines

The Sentencing Guidelines for the defendants vary based on the crimes to which they pleaded guilty and the scale of their offenses of conviction.  Svetlana Mazer's Guideline level is 12, using a base offense level of 14 for the obstruction of justice conviction, and a two-level reduction for acceptance of responsibility.  (Svetlana Mazer PSR ¶¶ 78, 85).  Because she has no criminal history, her Criminal History Category is I and her Guidelines range is 10-16 months' imprisonment, which under the Guidelines can be satisfied by imprisonment or a combination of imprisonment and community confinement or home detention.  (*Id.* ¶ 130).

Makovetskaya's Guideline level is 15, using a base offense level of 18 for her crime of conviction and a three-level reduction for acceptance of responsibility.  (Makovetskaya PSR ¶¶ 77, 84-85).  The base offense level is calculated using an estimate of loss of between $200,000 and $400,000, which reflects the amount of proceeds of the scheme that were deposited into accounts held in Makovetskaya's own name.  Because Makovetskaya has no criminal history, her Criminal History Category is I and her Guidelines range is 18-24 months' imprisonment.  (*Id.* ¶ 122).

Medzon's Guideline level is 17, using a base offense level of 18 for her crime of conviction, a two-level enhancement for knowing or believing (or consciously avoiding knowing) that the funds she was structuring were proceeds of unlawful activity, and a three-level reduction for acceptance of responsibility.  (Medzon PSR ¶¶ 90-91, 97-98).  The base offense level is

4

calculated using an estimate of between $200,000 and $400,000, which reflects the value of the cash that Medzon structured through hundreds of withdrawals over an approximately five-year period. Because Medzon has no criminal history, her Criminal History Category is I and her Guidelines range is 24-30 months' imprisonment. (*Id.* ¶ 147).

### B. Section 3553(a) Factors

#### 1. Nature and Circumstances of the Offense (Section 3553(a)(1))

The defendants' crimes were very serious. They enabled a complex money laundering scheme involving $30 million in crime proceeds to operate and thrive undetected for years, causing enormous losses to the City of New York and undermining the integrity of the financial system. Had Makovetskaya been truthful with the bank, had Svetlana Mazer been truthful with City officials, and had Medzon not structured cash transactions and engaged in other deceptive conduct, it is possible that the scheme would have been detected earlier. Medzon's conduct, in particular, was extensive in duration and scope, causing her to travel to numerous banks on a regular basis, using dozens of ATM cards, to extract illicit gains in cash from shell company bank accounts over the course of almost five years. It appears that at least a portion of those funds were deposited into safe deposit boxes that Medzon maintained.

The conduct also enabled the defendants to accumulate substantial illicit gains that, but for the Government's efforts to seize accounts and safe deposit boxes, they would have been able to enjoy undetected. Bank records reflect, and Makovetskaya admitted during a non-custodial interview, that she had placed approximately $380,000 in funds from MAS accounts into a personal bank account by the time of her arrest. Medzon received over $2 million into personal bank accounts, over $1 million of which remained in her accounts at the time of her arrest.

5

Svetlana Mazer, as Mark Mazer's wife, shared directly in the proceeds of the scheme that Mark Mazer diverted to himself, accumulating luxury properties in Manhattan and Manhasset and accumulating millions of dollars in savings and investments.

On the other hand, the Government does not dispute defense counsel's characterization of the offenses as situational in nature, derived from their relationships to Mark Mazer and his interest in spreading nominal control of shell companies and transactions among numerous individuals to decrease the possibility that the scheme would be detected.   Moreover, evidence reflects that Mark Mazer exercised a high level of control over the entities that the defendants established and the transactions that were routed through those entities.   At trial, for example, Mark Mazer's accountant, Lev Sukhovitsky, testified that he dealt with Mark Mazer exclusively concerning all of the corporations referenced above, including corporations that nominally were controlled by the defendants now facing sentencing.   (Tr. 2301-03).   Makovetskaya, in her non-custodial statement, informed agents that once MAS and its accounts were established (in part through the false statements to the bank to which she pleaded guilty), her primary responsibilities consisted of signing checks from the accounts that Mark Mazer had in his possession, which were being made out to entities with which she was unfamiliar. Makovetskaya stated that she gave ATM cards associated with the accounts to Medzon and to Mark Mazer, and that she had a stamp made with her signature so that Mark Mazer could sign her name in her absence.   Mark Mazer possessed the keys to the post office boxes that were used as mailing addresses for the shell companies controlled by Makovetskaya and Medzon, as reflected by Makovetskaya's non-custodial statement and by employees of the UPS stores at which the post office boxes were located.

2.      History and Characteristics of the Defendants (Section 3553(a)(1))

As reflected by the Presentence Reports and the defendants' sentencing submissions, all of the defendants have sympathetic personal histories. They were raised under difficult circumstances, both in the former Soviet Union and in the United States. They obtained strong educations and raised families while working to support them. Svetlana Mazer, following the incarceration of Mark Mazer, is raising a minor child alone and has two other children in their twenties who are close to her. Makovetskaya, whose husband died suddenly while this case was pending, also is raising a minor child alone and has a child in her early twenties who is close to her. Medzon has a history of health issues, both involving herself and loved ones. None of the defendants has any prior criminal history.

3.      Promotion of Respect for Law and Deterrence (Section 3553(a)(2))

Section 3553(a) counsels that the sentence imposed should promote respect for the law. These offenses harmed the City and undermined the integrity of the financial system by helping enable a complex money laundering scheme to operate undetected for years. The sentence imposed should appropriately punish the deceptive conduct that caused these harms. The scheme also was lucrative, both for these defendants directly and for Mark Mazer and Aronshtein, whose other crimes were facilitated by these defendants' actions. Punishment should be sufficient to deter others from committing similar offenses.

4. <u>The Guidelines (Section 3553(a)(4))</u>

Section 3553(a) requires that the Court consider the applicable Guidelines when imposing sentence. Here, the Guidelines call for sentences of imprisonment for each of the defendants, or, in the case of Svetlana Mazer, a sentence that includes home detention or community confinement along with incarceration.

The Probation Office, however, has recommended downward variances from the Guidelines ranges applicable to each of the three defendants, recommending that Svetlana Mazer and Makovetskaya receive probationary sentences, and that Medzon receive a sentence of 1 year and 1 day imprisonment rather than the 24-30 month range called for by the Guidelines.

### III. <u>CONCLUSION</u>

For the reasons forth above, although sentences within the relevant Guidelines ranges would be appropriate considering the seriousness of the overall offense and the need for deterrence, considering the mitigating factors identified in the Presentence Reports, the Government would not oppose the sentences recommended by the Probation Office.

Dated:	July 11, 2014
	New York, New York

Respectfully submitted,

PREET BHARARA
United States Attorney
Southern District of New York

By:     /s/
Howard S. Master/Andrew D. Goldstein
Assistant United States Attorneys
212-637-2248/1559

**CERTIFICATE OF SERVICE**

HOWARD S. MASTER deposes and says that he is employed in the Office of the United States Attorney for the Southern District of New York.

That on July 11, 2014, he caused to be served a copy of the foregoing Government's Sentencing Memorandum by ECF and email on:

>Henry Mazurek, Esq.
>Sarita Kedia, Esq.,
>Benjamin Brafman, Esq.
>Joshua Kirshner, Esq.

I declare under penalty of perjury that the foregoing is true and correct. Title 28, United States Code, Section 1746.

>　/S/
>HOWARD S. MASTER

Executed on:  July 11, 2014
　　　　　　　New York, New York